IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DVISION

| | |
|---|---|
| NANCY ADDUCI, ) | |
| ) | CASE NO: 24cv7512 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KIMBERLY FOXX, ) | |
| in her individual and official capacity, and ) | |
| COOK COUNTY, ) | |
| ) | JURY DEMAND |
| Defendants. ) | |

## COMPLAINT

Ms. Nancy Adduci, by her undersigned counsel, respectfully submits the following Complaint:

**Parties**

1. Plaintiff Nancy Adduci ("Ms. Adduci" or "Plaintiff"), is a resident of the Northern District of Illinois, who at all relevant times was employed as an Assistant Cook County State's Attorney by Defendant Kim Foxx and Defendant Cook County. Ms. Adduci is white.

2. Defendant Kimberly M. Foxx ("Defendant Foxx" or "Foxx") is the current Cook County State's Attorney and leads the Cook County State's Attorney's Office ("CCSAO"). Defendant Foxx has promoted "intentional policies designed to increase the diversity of the Office, with a particular focus on building a pipeline for diverse supervisors, bureau chiefs, and executive staff." Defendant Foxx is sued here in both her individual and official capacities.

3. The Cook County State's Attorney's Office ("CCSAO") is a prosecuting agency of the State of Illinois that is fully funded by Defendant Cook County. Defendant Cook County

is a municipal unit of government.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred within this judicial district.

6. Plaintiff has met all administrative prerequisites to suit in that she filed a timely charge of discrimination with the EEOC and received a right to sue letter on July 1, 2024.

## Factual Allegations

7. Ms. Adduci has been a Cook County resident for well over three decades. She received her Bachelor of Arts from Loyola University, *cum laude*, and her juris doctor from DePaul University College of Law.

8. Ms. Adduci began her career with the CCSAO in 1996 as an Assistant State's Attorney in the Criminal Appeal Division. She followed that with assignments to the Traffic Division and to First Municipal, where she conducted hundreds of trials and contested hearings.

9. Ms. Adduci spent the next seven years serving in various divisions within the office, including the Felony Review Unit where Ms. Adduci became adept at interviewing witnesses and assessing the strengths and weaknesses of potential criminal cases. Ms. Adduci would return to the Felony Review Unit as a supervisor in 2001 where she handled almost exclusively homicide cases and led a team of 10 other assistant State's Attorneys.

10. Adduci continued to hone these skills when subsequently assigned to the Preliminary Hearing Unit, the Grand Jury, and the Homicide and Sex Unit.

11. Ms. Adduci was promoted to the felony trial division in 2003, where she worked for over a decade. During that time Ms. Adduci conducted over 500 bench trials and contested hearings.

12. While in the felony trial division, Ms. Adduci conducted over ninety (90) felony jury trials including dozens of homicide trials. Ms. Adduci was admitted to the Capital Litigation Trial Bar and tried capital murder cases.

13. In 2014, Ms. Adduci was promoted and became a supervisor in the Conviction Integrity Unit ("CIU"), now known as the Conviction Review Unit ("CRU") (collectively, the CIU and CRU are referred to herein as the CIU).

14. The CIU was created to examine claims of actual innocence, *i.e*, to determine if newly produced evidence suggests that the convicted Defendant is "actually innocent" of the offense for which they were convicted.

15. While Adduci was a supervisor in the CIU, the unit's primary responsibility was to investigate these claims of actual innocence and make recommendations to the State's Attorney regarding the appropriate course of action including, but not limited to, seeking to vacate convictions in certain cases following a thorough investigation.

16. In the Spring of 2019, following the retirement of CIU's first Director, Ms. Adduci was promoted again. She was promoted this time to the position of Director of the CIU.

17. During her time in the CIU as both a supervisor and its Director, Ms. Adduci personally conducted scores of investigations resulting in post-conviction relief in over 200 criminal cases.

18. During her tenure in the CIU, Ms. Adduci created and oversaw the implementation of a number of CIU protocols, many of which are still in effect today. These include protocols for reviewing innocence claims involving criminally convicted police officers and cases involving newly discovered medical evidence and forensic findings.

19. Ms. Adduci was highly respected and widely renowned in her field during her tenure. Ms. Adduci would travel to other jurisdictions and help train attorneys in implementing policies for reviewing claims of actual innocence.

20. In 2021, Adduci received a fellowship with the American College of Trial Lawyers (ACTL), an honor extended to only 1% of the total lawyer population of any state and only bestowed upon "experienced trial lawyers who have mastered the art of advocacy and whose professional careers have been marked by the highest standards of ethical conduct, professionalism, civility and collegiality."

21. On or about October 20, 2023, Ms. Adduci was called into a mandatory in-person meeting with the First Assistant and the Chief Deputy of the CCSAO, the second and third ranking employees of the CCSAO.

22. During this meeting Ms. Adduci was told that Defendant Foxx was going to remove her as Director of the CIU.

23. Ms. Adduci was informed by the First Assistant that the decision had nothing to do with Ms. Adduci's performance.

24. Instead, the First Assistant informed Ms. Adduci that Foxx wanted someone in the position who was "more representative of the community."

4

25. Ms. Adduci was shocked that she was not sufficiently "representative of the community," after serving almost three decades in the CCSAO, living in Cook County, getting married in Cook County, and sending her kids to public school in Cook County.

26. Despite being removed as CIU's director, Ms. Adduci was asked to continue serving as the CIU's *de facto* Director and to continue with her ongoing investigations, supervisory duties, and efforts to revamp policy.

27. Shortly thereafter, Ms. Adduci was informed during a meeting with the First Assistant and Chief Deputy that she was demoted to a deputy position in CIU.

28. Ms. Adduci's pay was reduced with this demotion.

29. Despite this demotion and the reduction of pay, the First Assistant again asked Ms. Adduci to continue to act as the CIU's *de facto* Director.

30. During the third week of November, Ms. Adduci was informed by the First Assistant that a much younger black ASA who had been serving as Foxx's policy advisor on matters of criminal justice reform and had no practical criminal experience, would be the new Director of the CIU.

31. The much younger black ASA was appointed to the director of CIU even though she had a "blatantly obvious conflict of interest."

32. Despite Ms. Adduci's demotion and her reduced rate of pay, the First Assistant again requested that Ms. Adduci continue with her same duties. Ms. Adduci was still, in effect, acting as the CIU Director.

33. Ms. Adduci contracted the human resources division of the CCSAO to inquire into her rights and to seek assistance in filing a discrimination complaint.

34. Several weeks later, on December 27, 2023, Ms. Adduci was summarily ordered to appear the following day at the executive offices of the CCSAO located in Chicago's Loop. This was so even though Ms. Adduci was taking approved vacation time.

35. Ms. Adduci contacted Human Resources and reminded them that she was on vacation. She also informed them that she was attending a friend's funeral the following day.

36. Ms. Adduci was told that her appearance was needed in person as soon as the funeral had concluded.

37. On December 29, 2023, Ms. Adduci met with representative of the Human Resources Department at the CCSAO executive offices. Also attending *via* video Defendant Foxx's Chief of Staff.

38. Upon entering the meeting, the Chief of Staff read a prepared script from the comfort of her own home informing Ms. Adduci that she was being terminated effective immediately; Ms. Adduci was 53 years' old and only twenty-two months short of retirement. No reason for Ms. Adduci's termination was given.

### Count I
### Violation of the Equal Protection Clause
### 42 U.S.C. § 1983

39. Plaintiff incorporates Paragraphs 1 through 38 as set forth herein.

40. Defendant Foxx discriminated against Ms. Adduci on account of Ms. Adduci's race and age.

41. Defendant Foxx's actions were willful and undertaken in bad faith.

42. Plaintiff has been injured as a direct and proximate result of Defendants Foxx's actions.

## Count II
**Violation of the Age Discrimination in Employment Act of 1967**
**29 .S.C. § 621,** *et seq.*

43. Plaintiff incorporates Paragraphs 1 through 34 as set forth herein.

44. Defendant Foxx discriminated against Ms. Adduci and retaliated against her for opposing conduct prohibited by the ADEA.

45. Defendant Foxx's action were willful and undertaken in bad faith.

46. Plaintiff has been injured as a direct and proximate result of Defendants Foxx's actions.

47. On July 1, 2024, Ms. Adduci received from the Equal Employment Opportunity Commission notice of her right to commence suit.

48. Plaintiff recognizes the decision handed down by the Seventh Circuit in Opp vs. Office of the Cook County State's Attorney, 630 F.3d 616 (7th Cir. 2010), which states that employees of the State's Attorney's Office at a certain level are excluded from coverage under the ADEA.

49. Plaintiff notes that this issue has yet to be decided by the United States Supreme Court and there is case law from other Circuits that is contrary to the *Opp* decision. Plaintiff sets forth this claim to preserve it for possible review and to urge in good faith a change in the law.

## Count III
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e,** *et seq.*

50. Plaintiff incorporates Paragraphs 1 through 38 as set forth herein.

51. Defendant Foxx discriminated against Ms. Adduci on account of Ms. Adduci's race.

7

52. Defendant Foxx discriminated against Ms. Adduci and retaliated against her for opposing conduct prohibited by Title VII.

53. Defendant Foxx's actions were willful and undertaken in bad faith.

54. Plaintiff has been injured as a direct and proximate result of Defendants Foxx's actions.

55. On July 1, 2024, Ms. Adduci received from the Equal Employment Opportunity Commission notice of her right to commence suit.

### Count IV
### Violation of the Illinois Civil Rights Act of 2003
### 740CS 23/1, *et seq*.

56. Plaintiff incorporates Paragraphs 1 through 38 as set forth herein.

57. Defendant Foxx discriminated against Ms. Adduci on account of Ms. Adduci's race and age, and retaliated against her for opposing conduct prohibited by the Illinois Civil Rights Act.

58. Defendant Foxx's actions were willful and undertaken in bad faith.

59. Plaintiff has been injured as a direct and proximate result of Defendants Foxx's actions.

### Count V
### Indemnification

60. Plaintiffs incorporate and reallege Paragraphs 1 through 38 above.

61. Defendant Cook County must indemnify Defendant Foxx against any amounts recovered by Plaintiff in this action, including attorney fees, for acts Foxx undertook in her official capacity.

## Request for Relief

WHEREFORE, Plaintiff respectfully requests that the Court:

a.) enter judgment in her favor and against Defendants;

b.) award Plaintiff damages, including lost wages both past and future, and lost benefits both past and future, to which she is entitled

c.) award Plaintiff compensatory damages for Ms. Adduci's psychological and emotional distress and damages for loss of standing in her professional community, and damage to her reputation;

d.) award attorney fees and costs;

e.) award pre and post-judgment interest;

f.) grant injunctive relief enjoining Defendants from engaging in the discriminatory practices contained therein; and

g.) grant any such further relief the Court deems just.

## Jury Trial Demand

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

NANCY ADDUCI

By: /s/ Robert Robertson
One North LaSalle, Suite 300
Chicago, Illinois 60602
(312) 223-8600
robrobertson1@sbcglobal.net
*Attorney for Plaintiff*

9